J-S32032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.K.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3887 EDA 2016 |

Appeal from the Decree and Order December 13, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000915-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: S.C.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3889 EDA 2016 |

Appeal from the Decree and Order December 13, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000916-2016

BEFORE:   GANTMAN, P.J., STABILE, and FITZGERALD[*], JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 09, 2017**

S.R. ("Mother") appeals from the December 13, 2016 decrees and orders involuntarily terminating her parental rights to K.K.R. (born in August of 2011) and S.C.R. (born in October of 2012) (collectively "Children") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and

---

[*] Former Justice specially assigned to the Superior Court.

(b), and changing Children's permanency goal to adoption under the Juvenile Act, 42 Pa.C.S. § 6351.[1]  We affirm.

On March 5, 2015, Mother and Children first became known to the Department of Human Services of Philadelphia County ("DHS") as a result of a General Protective Services ("GPS") report alleging that Mother resided in an unfit house with Children, abused drugs, did not provide adequate food, and neglected Children.  On March 20, 2015, Mother and Children moved to a drug and alcohol rehabilitation shelter.  Mother was discharged from the shelter due to her non-compliance and inappropriate behavior towards Children.  Mother and Children then moved into another shelter on April 17, 2015.  Shortly thereafter, the shelter evicted Mother after a staff member observed her inappropriately disciplining Children, which included spanking and pinching them.  On April 27, 2015, Mother admitted that she hits Children when DHS met with her to discuss the allegations.  On same day, DHS obtained an Order of Protective Custody ("OPC") for Children and placed them with their maternal aunt, B.C. ("Maternal Aunt").

At the shelter care hearing on April 29, 2015, the trial court lifted the OPC and ordered the temporary commitment to DHS to stand.  The trial

_____

[1] Children have different biological fathers.  The putative father of K.K.R. is unknown, and the putative father of S.C.R. is K.M. ("Father-2").  In separate decrees and orders entered on December 13, 2016, the trial court involuntarily terminated the parental rights of unknown father to K.K.R. and Father-2 to S.C.R.  The unknown father of K.K.R. and Father-2 are not parties to the current appeal, nor did they file separate appeals.

court granted Mother supervised visitation and referred her to the Clinical Evaluation Unit ("CEU") for a drug and alcohol screening and dual diagnosis assessment for mental health and substance abuse. The CEU report issued a progress report on May 5, 2015, revealing Mother tested positive for marijuana and PCP.

On May 8, 2015, the trial court adjudicated Children dependent and committed them to DHS. The case was transferred to the Community Umbrella Agency ("CUA"), which developed a Single Case Plan ("SCP") for reunification with Children. Mother's SCP objectives were: (1) to participate in a dual diagnosis treatment and submit to random drug screens at CEU; (2) to receive referral for Achieving Reunification Center ("ARC"); (3) to engage in parent education classes; (4) to obtain appropriate housing; and (5) to attend supervised visitation with Children. Mother's SCP objectives have remained the same throughout the duration of the case.

On October 5, 2016, DHS filed petitions to involuntarily terminate Mother's parental rights and change Children's permanency goal to adoption. On December 13, 2016, the trial court held a hearing on the petitions. At the hearing, DHS presented the testimony of Essence Jones, the CUA case manager at Turning Points. Mother, represented by counsel, testified on her own behalf. Father-2, represented by counsel, also testified. At the conclusion of the hearing, the trial court entered decrees and orders

terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and changing Children's permanency goal to adoption.

On December 30, 2016, while represented by counsel, Mother filed *pro se* notices of appeal and statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2] On January 11, 2017, counsel for Mother, filed amended concise statements of errors complained of on appeal in accordance to Pa.R.A.P. 1925(b). This Court consolidated Mother's appeals *sua sponte* on January 17, 2017. Mother raises the following issues.

> Whether the trial court committed reversible errors when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the adoption act, 23 Pa.C.S. § 2511 (a)(1), (a)(2), (a)(5), and (a)(8)?
>
> Whether the trial court committed reversible errors when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the adoption act, 23 Pa.C.S. § 2511(b)?

Mother's Brief at 4.[3]

_____

[2] We note that Mother's *pro se* concise statements of errors failed to adequately identify in a concise manner or with specificity the issues sought to be pursued on appeal in accordance with Rule 1925(b)(4)(ii). As such, the trial court directed counsel to assist Mother with her appeals.

[3] In her amended concise statement of errors complained of on appeal and appellate brief, Mother did not challenge the trial court's orders changing Children's permanency goal to adoption. Thus, this issue is waived. **See Krebs v. United Refining Co.**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his

*(Footnote Continued Next Page)*

We summarize Mother's two arguments together. Mother contends that the evidence makes it clear that DHS did not prove by clear and convincing evidence that her parental rights should be terminated pursuant to Section 2511(a) of the Adoption Act. Mother's Brief at 8. Mother points out that she has made progress during the course of the case and has demonstrated a willingness to remedy the conditions and causes of the incapacity, abuse, neglect or refusal to perform parental duties. *Id.* at 11. Since the evidence failed to establish that her relationship with Children was severed, Mother argues that DHS failed to prove that termination under Section 2511(b) was in the best interests of Children. *Id.* at 13.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*(Footnote Continued)* ─────────────

concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. Clear and convincing evidence is defined as:

> testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003) (citation omitted).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (quoting *In re: N.C.*, 763 A.2d 913, 917 (Pa. Super. 2000)). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In this case, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b), which provides as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to

the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his . . . parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (internal citations omitted). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

- 8 -

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his…parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re*

- 9 -

***A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." ***Id.*** at 340. Pursuant to Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In Interest of Lilley***, 719 A.2d 327, 330 (Pa. Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Z.P.***, 994 A.2d at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-76 (Pa. Super. 2003).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. *In re C.P.*, 901 A.2d 516 (Pa. Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." *Id.* at 520. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, 994 A.2d at 1121.

> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*Id.* (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have his or her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental

obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B., N.M.*, 856 A.2d at 855. "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph Fernandes, we conclude Mother's issues on appeal merit no relief. The trial court's opinion comprehensively discusses and properly disposes of the questions presented. *See* Trial Ct. Op., 1/17/17 , at 3-10 (finding: Children

have been removed from Mother's custody since April 27, 2015, nineteen months at the time of trial due to her drug abuse and inability to appropriately parent Children; Mother's compliance with her SCP goals has steadily declined; Mother tested positive for PCP on September 9th and 29th of 2016; Mother stopped attending her dual diagnosis treatment program and was discharged without successfully completing the program; Mother was referred to ARC for parenting classes, but was unsuccessfully discharged; Mother chose to complete parenting classes elsewhere, but these classes did not improve her ability to parent; Mother has never had appropriate housing; Mother currently lives at a shelter where Children cannot join her; Mother's recent tardiness to her supervised visits with Children has caused some of the visits to be canceled; Mother has visited Children only twice in the last three months; Mother's inconsistency in visiting Children has caused their relationship to become unhealthy; Mother's bond with Children has become very attenuated; Mother cannot provide Children with permanency; Maternal Aunt has provided Children with love, care and stability for the last nineteen months; CUA case manager credibly testified regarding the lack of parental relationship between Mother and Children in contrast to the parental bond that exists between Children and Maternal Aunt; termination of Mother's parental rights would not cause Children irreparable harm; record demonstrates Mother's repeated unwillingness to remedy the cause of her incapacity to parent, her failure to

perform any parental duties, and her inability to remedy conditions that led to the placement of Children; evidence is clear and convincing that termination of Mother's parental rights would be in best interests of Children; thus, court properly terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b)). Accordingly, we affirm on the basis of the trial court opinion.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2017

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

| | | |
|---|---|---|
| In the Interest of K.K.R., a Minor | : | CP-51-DP-0001081-2015 |
| | : | CP-51-AP-0000915-2016 |
| In the Interest of S.C.R., a Minor | : | CP-51-DP-0001078-2015 |
| | : | CP-51-AP-0000916-2016 |
| | | |
| | : | FID: 51-FN-000914-2015 |
| | : | |
| APPEAL OF: S.R., Mother | : | 3887/3889 EDA 2016 |

**OPINION**

**Fernandes, J.:**

Appellant S.R. ("Mother") appeals from the order entered on December 13, 2016, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Mother's parental rights to K.K.R. ("Child 1") and S.C.R. ("Child 2") (the "Children") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). Mother, acting *pro se*, filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).[1]

**Factual and Procedural Background:**

The family in this case became known to DHS on March 5, 2015, when DHS received a report that Mother neglected the Children, abused drugs and did not provide adequate food. Mother moved with the Children to a drug rehabilitation shelter, but was discharged for inappropriate behavior. Mother brought the Children to another shelter, but was discharged from that shelter for inappropriately disciplining the Children. On April 27, 2015, DHS met with Mother, who admitted to striking Child 2. DHS obtained an Order of Protective Custody and removed the Children, placing them with B.C. ("Aunt"), a maternal aunt. The trial court adjudicated the Children dependent on May 8, 2015, fully committing them to DHS custody. The case was then transferred to a Community Umbrella Agency ("CUA") which developed a Single Case Plan ("SCP") with objectives for Mother. Over the course of 2015 and 2016, Mother failed to complete her

---

[1] Although Mother file a *pro se* appeal, Mother still has court-appointed counsel, which the trial court has directed to assist Mother on her appeal.

objectives. On October 5, 2016, DHS filed petitions to involuntarily terminate Mother's parental rights.

The goal change termination trial was held on December 13, 2016. The CUA case manager testified that Mother's SCP objectives have been the same since the start of this case: engage in dual diagnosis treatment, take parenting classes, obtain appropriate housing and visit with the Children. (N.T. 12/13/16, pg. 13). The CUA case manager referred Mother to programs and services, and Mother did enroll early in the life of the case. The CUA case manager testified that at the time of trial, Mother had completed none of the programs and had been unsuccessfully discharged from all of them. (N.T. 12/13/16, pg. 14). Mother was enrolled in drug and alcohol treatment at Nu-Stop, but last attended on October 14, 2016. Mother tested positive for PCP, her drug of choice, at the Clinical Evaluation Unit ("CEU") on September 9th and 29th of 2016. (N.T. 12/13/16, pgs. 14-15, 42). The CUA case manager referred Mother to the Achieving Reunification Center ("ARC") for parenting classes, housing services and drug and alcohol treatment. Mother did not successfully complete any of these services. (N.T. 12/13/16, pg. 16). Mother completed parenting at another location, but it did not improve her parenting skills. (N.T. 12/13/16, pg. 42). Mother is no longer enrolled in any ARC services. Mother told CUA that she does not have any housing, and was unable to provide proof that she was employed. (N.T. 12/13/16, pg. 17). Mother's visitation with the Children has been inconsistent. Mother's supervised weekly visits were originally scheduled for Saturdays, but Mother missed three in a row and the visitation time had to be moved. Mother attended two visits in the last three months. (N.T. 12/13/16, pg. 18). Mother is always late for visits, which has caused some visits to be cancelled. While the visits are appropriate, the Children separate easily from Mother when visits end. (N.T. 12/13/16, pg. 19). The Children are placed with Aunt in a pre-adoptive home. Mother's inconsistency in visiting the Children has turned their relationship unhealthy. The Children would not suffer any irreparable harm if Mother's rights were terminated. (N.T. 12/13/16, pg. 20). The Children have a very positive relationship with Aunt, who cares for all their everyday needs. Aunt even postponed a planned relocation to Atlanta, Georgia, in order to allow Child 1 to finish school in Philadelphia. It is in the Children's best interest to be adopted. (N.T. 12/13/16, pg. 24). The CUA case manager testified that for the life of this case, Aunt has performed all parental duties for the Children and Mother has performed none. (N.T. 12/13/16, pg. 25). Mother has made no progress on any of her

objectives, so it would be in the Children's best interest to terminate her parental rights. (N.T. 12/13/16, pg. 26). Mother testified that she was currently enrolled in and consistently attending drug and alcohol and mental health treatment at Nu-Stop. (N.T. 12/13/16, pgs. 53-54). Mother testified that she completed ARC housing services. She is currently living in a shelter which does not allow children. (N.T. 12/13/16, pgs. 55-56). Mother testified that she had been employed, but had been fired recently. She described her interaction with the Children as "the best visits." (N.T. 12/13/16, pgs. 56-58). Following argument, the trial court terminated Mother's parental rights to the Children under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b), and changed their permanency goal to adoption.[2] Following the decision, Mother stated on the record that she would go to Aunt's house and take the Children with her. The trial court then issued a stay-away order, prohibiting Mother from entering Aunt's house. On December 16, 2016, Mother filed this appeal.

**Discussion:**

Although Mother filed a rambling Statement of Errors pursuant to Pa.R.A.P. 1925(b), the trial court was able to discern Mother's request and reformulated Mother's issues on appeal as: Did the trial court err or abuse its discretion when it terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b) and changed the Children's permanency goal to adoption?

Mother has appealed the involuntary termination of her parental rights. The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a), which provides the following grounds for Section 2511(a)(1):

> **(a) General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:
>
> (1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. *In re Adoption of Atencio*, 650 A.2d 1064 (Pa. 1994). To satisfy Section (a)(1), the

---

[2] The trial court also terminated the parental rights of fathers and putative fathers on this date, but these individuals have not appealed.

moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.,* 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue.

Petitions were filed on October 5, 2016. Mother's SCP objectives have been the same since the start of this case: engage in dual diagnosis treatment, take parenting classes, obtain appropriate housing and visit with the Children. (N.T. 12/13/16, pg. 13). Mother enrolled in a dual diagnosis treatment program at Nu-Stop, but during the six-month period she stopped attending and was discharged without successfully completing treatment. Mother tested positive for PCP on September 9th and 29th of 2016, while she was still enrolled in the treatment program. (N.T. 12/13/16, pgs. 14-15, 42). Mother was referred to ARC, but did not complete any services. She was unsuccessfully discharged from ARC during the six-month period. (N.T. 12/13/16, pgs. 16-17). During the entire six-month period, Mother did not have appropriate housing. For some of the period, Mother was homeless, but eventually moved into a shelter which does not allow children. (N.T. 12/13/16, pgs. 17, 55-56). Mother had employment, but during the six-month period she was fired and did not obtain another job. (N.T. 12/13/16, pgs. 17, 56-58). While Mother was always late, she made most of her weekly supervised visits early in the life of this case. However, her attendance decreased sharply during the six-month period. Mother missed three visits in a row, and saw the Children only two times in three months. (N.T. 12/13/16, pgs. 18-19). Mother has not parented the Children at all since they came into care, and has made no progress on any of her objectives during the six-month period. (N.T. 12/13/16, pgs. 25-26). Looking back beyond the six-month period, Mother enrolled in all appropriate services soon after this case began. Since that time Mother's compliance has steadily declined. Mother has refused or failed to perform parental duties during the relevant time period. Because the trial court heard clear and convincing evidence to this effect, termination under this section was proper and should be affirmed.

The trial court terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. _Adoption of C.A.W._, 683 A.2d 911, 914 (Pa. Super. 1996).

Mother's SCP objectives have been the same since the start of this case: engage in dual diagnosis treatment, take parenting classes, obtain appropriate housing and visit with the Children. (N.T. 12/13/16, pg. 13). Following a CUA referral early in the life of the case, Mother enrolled in a dual diagnosis program at Nu-Stop. She did not complete the program, and last attended on October 14, 2016. Mother tested positive for PCP, her drug of choice, as recently as September 29, 2016. (N.T. 12/13/16, pgs. 14-15, 42). Mother testified that she is still enrolled in and attending the program, but this testimony is not credible. (N.T. 12/13/16, pgs. 53-54). Mother was referred to ARC for parenting classes, but was unsuccessfully discharged. Mother chose to complete parenting classes elsewhere, but these classes did not improve her ability to parent. (N.T. 12/13/16, pgs. 16, 42). Mother has never had appropriate housing. She currently lives in a shelter where the Children will not be permitted. (N.T. 12/13/16, pgs. 17, 55-56). Mother recently lost her job and has no source of income. (N.T. 12/13/16, pgs. 17, 56-58). Mother is not currently involved in any services, and has not successfully completed any of her objectives. (N.T. 12/13/16, pgs. 16-17, 26). Early in the life of the case, Mother made her weekly supervised visits consistently. However, Mother has been late to nearly all of her more recent visits. Mother's consistent lateness has caused some visits to be cancelled. Mother has visited the Children only twice in the last three months. (N.T. 12/13/16, pgs. 18-19). Mother's inconsistency in visiting the Children has caused their relationship to become unhealthy. (N.T. 12/13/16, pg. 20). The Children need permanency, which Mother cannot provide. Mother's complete lack of progress, coupled with her decreased engagement with services, demonstrate that she is unwilling to remedy the causes of her incapacity to parent in order to provide the Children with essential parental care, control or subsistence necessary for their physical and mental well-being. Termination under this section was proper.

Mother also appeals the trial court's termination of parental rights under 23 Pa.C.S.A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The Children have been in DHS custody since April 27, 2015, nineteen months at the time of trial. The Children were removed because Mother abused drugs and was unable to parent. Mother's SCP objectives have been the same since the start of this case: engage in dual diagnosis treatment, take parenting classes, obtain appropriate housing and visit with the Children. (N.T. 12/13/16, pg. 13). The CUA case manager referred Mother to a dual diagnosis program, and she enrolled early in the life of this case. However, she still tested positive for PCP twice in September 2016. Mother was subsequently unsuccessfully discharged from the dual diagnosis program, and has not sought a new referral or enrolled in another program. (N.T. 12/13/16, pgs. 14-15, 42). Mother was referred to ARC for parenting classes and housing services. Mother was unsuccessfully discharged from parenting classes at ARC. (N.T. 12/13/16, pg. 16). She has never had appropriate housing, and has no prospect of finding appropriate housing within a reasonable time. (N.T. 12/13/16, pgs. 17, 55-56). Mother has weekly supervised visits with the Children. She is always late to visits, and has recently been so late that numerous visits were cancelled. Mother has seen the Children two times in the last three months. (N.T. 12/13/16, pgs. 18-19). DHS and CUA not only made all appropriate referrals, Mother began her programs. However, since enrolling at the start of this

case, Mother has made no progress whatsoever on her objectives. The conditions which led to the placement of the Children continue to exist. Mother' decreasing engagement and compliance over time demonstrates that she would not be able to correct the causes of her incapacity to parent in a reasonable time. The Children are placed in a pre-adoptive home with Aunt, who has provided all parental care for them during the last nineteen months. (N.T. 12/13/16, pgs. 20, 25). The Children have a very positive relationship with Aunt, who cares for all their everyday needs. Aunt even postponed a planned relocation to Atlanta, Georgia, in order to allow Child 1 to finish school in Philadelphia. (N.T. 12/13/16, pg. 24). It would be in the Children's best interest to terminate Mother's parental rights. (N.T. 12/13/16, pg. 26). As a result, the trial court found that termination of Mother's parental rights was in the best interest of the Children for their physical, intellectual, moral and spiritual well-being. Because the trial court made these determinations on the basis of clear and convincing evidence, termination under this section was also proper.

The trial court also terminated Father's parental rights under 23 Pa.C.S.A. §2511(a)(8), which permits termination when:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to the parent, only the present state of the conditions. _In re: Adoption of K.J.,_ 938 A.2d 1128, 1133 (Pa. Super. 2009). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love, comfort, security and stability. _In re Bowman,_ A.2d 217 (Pa. Super. 1994). See also _In re Adoption of T.T.B.,_ 835 A.2d 387, 397 (Pa. Super. 2003).

The Children have been in DHS custody since April 27, 2015, nineteen months at the time of trial. The Children were removed because Mother abused drugs and was unable to parent. Mother's SCP objectives have been the same since the start of this case: engage in dual diagnosis treatment, take parenting classes, obtain appropriate housing and visit with the Children. (N.T. 12/13/16, pg.

13). At the time of trial, Mother was not enrolled in a dual diagnosis program, and had never completed such a program. She continues to test positive for PCP. (N.T. 12/13/16, pgs. 14-15, 42). Mother has not improved her parenting skills by completing parenting classes. (N.T. 12/13/16, pg. 16). Mother has never had appropriate housing, and currently lives at a shelter where the Children cannot join her. (N.T. 12/13/16, pgs. 17, 55-56). Mother has always arrived late to visits. Recently, her lateness has caused visits to be cancelled. Mother has seen the Children twice in the last three months. (N.T. 12/13/16, pgs. 18-19). Mother's inconsistency in visiting the Children has caused their relationship to become unhealthy. (N.T. 12/13/16, pg. 20). Every one of the conditions which brought the Children into care still exists. Mother has made no progress on any of her objectives. The Children are placed in a pre-adoptive home with Aunt, who has provided all parental care for them during the last nineteen months. (N.T. 12/13/16, pgs. 20, 25). The Children have a very positive, healthy relationship with Aunt, who cares for all their everyday needs. Aunt even postponed a planned relocation to Atlanta, Georgia, in order to allow Child 1 to finish school in Philadelphia. (N.T. 12/13/16, pg. 24). It would be in the Children's best interest to terminate Mother's parental rights. (N.T. 12/13/16, pg. 26). The Children need a home that will provide safety and security, which Mother is unable to provide at this time. The testimony of DHS's witness was unwavering and credible. Because the record contains clear and convincing evidence to this effect, the trial court did not abuse its discretion and termination under this section was also proper.

After a finding of any grounds for termination under Section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.,* 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.,* 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *In re K.Z.S.* at 762-763. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors

such as inadequate housing, furnishings, income, clothing and medical care, if found to be beyond the control of the parent.

For much of the life of this case, Mother attended weekly supervised visits and was appropriate in her interactions with the Children. However, Mother was always late to visits. Her lateness has become more pronounced recently, leading to the cancellation of the vast majority of her visits. Mother has seen the Children twice in the last three months. (N.T. 12/13/16, pgs. 18-19). Mother's inconsistency in visiting the Children has damaged their relationship, and pushed the Children away. Her bond with the Children has become very attenuated. (N.T. 12/13/16, pg. 20). When visits end, the Children do not protest or cry, instead they leave in a calm and orderly manner. (N.T. 12/13/16, pg. 19). Mother does not have a strong parental relationship with the Children, and they would not suffer any irreparable harm if her rights were terminated. (N.T. 12/13/16, pg. 20). The Children are placed in a pre-adoptive home with Aunt, who has provided all parental care for them during the last nineteen months. (N.T. 12/13/16, pgs. 20, 25). The Children have a very positive, healthy relationship with Aunt, who cares for all their everyday needs. Aunt even postponed a planned relocation to Atlanta, Georgia, in order to allow Child 1 to finish school in Philadelphia. (N.T. 12/13/16, pg. 24). It would be in the Children's best interest to terminate Mother's parental rights. (N.T. 12/13/16, pg. 26). DHS provided credible testimony to the trial court. Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that termination of Mother's parental rights would not destroy an existing beneficial relationship.

Mother also alleges that the court erred in changing Child's permanency goal from reunification to adoption. In a change of goal proceeding, the child's best interest must be the focus of the trial court's determination. The child's safety and health are paramount considerations. *In re A.H.,* 763 A.2d 873 (Pa. Super. 2000). Pennsylvania's Juvenile Act recognizes family preservation as one of its primary purposes. *In the Interest Of R.P. a Minor,* 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make efforts to reunify the biological parents with their child. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.,* 778 A.2d 670 (Pa. Super. 2001).

The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

Mother continues to use drugs and is not enrolled in a court-ordered dual diagnosis program. (N.T. 12/13/16, pgs. 14-15, 42). Mother does not have appropriate housing, or a job with which to obtain new housing. (N.T. 12/13/16, pgs. 17, 55-56). Mother is not enrolled in ARC services. (N.T. 12/13/16, pgs. 14, 16-17). She is late to visits, and ten of her last twelve visits have been cancelled due to her tardiness. By failing to visit regularly, Mother has not maintained a relationship with her Children. (N.T. 12/13/16, pgs. 18-20). She has not engaged in the services referred by CUA to place her in a position to parent the Children. The Children are placed in a pre-adoptive home with Aunt, who has provided all parental care for them during the last nineteen months. (N.T. 12/13/16, pgs. 20, 25). The Children have a very positive, healthy relationship with Aunt, who cares for all their everyday needs. Aunt even postponed a planned relocation to Atlanta, Georgia, in order to allow Child 1 to finish school in Philadelphia. A goal of adoption is in the best interest of both Children. (N.T. 12/13/16, pg. 24). Because these facts were clearly and convincingly established by the credible testimony of DHS's witness, the court's change of permanency goal from reunification to adoption was proper.

**Conclusion:**

For the aforementioned reasons, the court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(2), (5), (8) and (b) since it would best serve the Children's emotional needs and welfare. Changing the Children's permanency goal to adoption was in his best interest. The trial court's termination of Mother's parental rights and change of permanency goal to adoption was proper and should be affirmed.

By the court,

Joseph Fernandes J.